## Commercial Ice Company *v.* Philadelphia and Reading Railway Company.

*Negligence—Railroads—Evidence—Ice pond—Oil.*

In an action by the owner of an ice pond against a railroad company to recover damages for the destruction of the ice upon the pond, there is no error in giving binding instructions for defendant where the evidence shows that an oil tank car containing 6,000 gallons of oil having been derailed without fault of the defendant, oil from the car ran through a break in the tank at the rate of two gallons a minute, and found its way into a stream flowing into plaintiff's pond; that defendant used every effort to pump the oil from the car into another car without success, and at the end of ten or eleven hours from the time of the accident, opened the valve at the bottom of the tank and let the remaining oil run out.

Argued April 3, 1899. Appeal, No. 41, Jan. T., 1899, by plaintiff, from judgment of C. P. No. 4, Philadelphia County, June T., 1897, No. 645, on verdict for defendant in case of Commercial Ice Company v. Philadelphia & Reading Railway Company. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Trespass to recover damages for the loss of 15,000 tons of ice of the estimated value of $7,500, caused by the defendant's alleged negligence in allowing large quantities of coal oil to flow over ice in an ice pond. Before AUDENRIED, J.

The facts appear by the opinion of the Supreme Court.

The court gave binding instructions for defendant. Verdict and judgment for defendant.

*Error assigned* was in giving binding instructions for defendant.

*S. Davis Page*, of *Page, Allinson & Penrose*, for appellant.— In considering the soundness of a nonsuit or binding instruction in favor of the defendant, the plaintiff is entitled to every fact or inference of fact which could fairly have been found in his favor by the jury, or drawn by them from all the evidence before them: Lerch v. Bard, 153 Pa. 573; Hineman v. Matthews, 138 Pa. 204; Bucklin v. Davidson, 155 Pa. 362; Davidson

v. Lake Shore, etc., Ry. Co., 171 Pa. 522; Fennell v. Harris, 184 Pa. 578; Gates v. Watt, 127 Pa. 20; Wenrick & Co. v. Heffner, 38 Pa. 207; Kohler v. Penna. R. Co., 135 Pa. 346; Philadelphia & Reading R. R. Co. v. Yerger, 73 Pa. 121; Howard Express Co. v. Wile, 64 Pa. 201; Stephens v. Scott, 43 Kansas, 285; Weber v. Kansas City Cable Ry. Co., 100 Mo. 194.

There was evidence from which the jury might fairly have found that the plaintiff's ice field was destroyed through defendant's negligence in pouring a very large quantity of petroleum from the tank car through a trough, some sixteen feet long, so placed that the oil was carried by the natural inclination of the ground into a spring or creek, not more than thirty or thirty-five feet distant from the railroad, which fed the ice fields below, and that the oil from the leak took a totally different course along a ditch out into the coal dirt or cinders parallel with the track running upon the embankment, and was absorbed by the coal dirt and cinders, and none of it reached the ice fields at all.

The defendant's conduct during the day in the treatment of the leak cannot be overlooked, as a proper estimate of such conduct may be of importance in determining whether or not Bertolet, defendant's train master, was guilty of negligence in ordering the wrecking crew to pour the oil out of the car in the manner described by the witness.

A special ground of defense was set up by the defendants, viz : plaintiffs were not damaged by the act complained of, but by something else for which they were not responsible. Surely, it at once becomes pertinent to inquire whether the defendants were not, even upon their own testimony, responsible for the injury done by the condition, which they themselves set up by way of defense. The question is not one of pleading. It is conceded that the allegata and probata must be in substantial agreement, but the reason of the rule must not be forgotten, viz : that the defendant may be in a position to prepare his defense, and may not be taken by surprise. In the case at bar the reason does not apply, because the facts from which we contend an inference of negligence arises in the manner in which the wreck was treated after the accident, all appear from the testimony of the defendants, and were peculiarly within their own knowledge. The case is, therefore, analogous to one in

which the plaintiff has introduced evidence without objection, which was relevant to the general topic of inquiry but inconsistent with the specific averments in the statement, in which case it is well settled that the defendant is not in a position to ask a nonsuit or a binding instruction on the ground of a variance, and the statement will be regarded as amended: Kroegher v. McConway & Torley Co., 149 Pa. 444; Brown v. Gilmore, 92 Pa. 40; McLenahan v. Andrews, 135 Pa. 383; Chapin v. Cambria Iron Works, 145 Pa. 478; Erie City Iron Works v. Barber, 118 Pa. 19; Trainor v. P. & R. R. R. Co., 137 Pa. 148.

*Thomas Hart, Jr.,* with him *John G. Lamb,* for appellee.— Where there is any evidence which would justify an inference of the disputed fact, it must go to the jury, but not where there is no evidence to authorize the inference: Lerch v. Bard, 153 Pa. 573; McGrann v. Pittsburg, etc., R. R. Co., 111 Pa. 183; Corcoran v. Life Ins. Co., 183 Pa. 443.

Damage done by oil to ice is necessarily complete by the first flow of it. Nothing is added by an additional flow of more oil.

Where damages are the gist of an action and none are shown there can be no recovery, the situation being described as injuria sine damno: Pollard v. Lyon, 91 U. S. 225.

The amount of the plaintiff's loss must be shown with reasonable certainty: Sedgwick on Damages, sec. 178; Sutherland on Damages, sec. 53; Marble v. City of Worcester, 4 Gray, 395.

The whole doctrine of contributory negligence is at the bottom of the principle that there can be no recovery by a plaintiff who cannot show how much of the injury suffered has been produced by a cause for which, if standing alone, he might recover, where there was another cause concurring in the injury for which he cannot recover: Little Schuylkill Navigation R. R. & Coal Co. v. Norton, 24 Pa. 465; Catawissa R. R. Co. v. Armstrong, 49 Pa. 193; Heil v. Glanding, 42 Pa. 499; Hughes v. Cincinnati, etc., R. R. Co., 91 Ky. 526; Balph v. Rathbun Co., 39 U. S. App., 297; Baltimore & Ohio R. R. Co. v. Sulphur Springs Independent School Dist., 96 Pa. 70; Ford v. Anderson, 139 Pa. 261; Brunner v. Blaisdell Bros., 170 Pa. 25; Richards v. Willard, 176 Pa. 181.

No presumption of negligence arises in favor of the plaintiff. If it intended to base recovery upon negligence causing the

wreck, such negligence would have to be averred and proved
affirmatively: Dougherty v. P. & R. R. R. Co., 171 Pa. 457;
Ewing v. Pittsburg, etc., Ry. Co., 147 Pa. 40; Fox v. Borkey,
126 Pa. 164; Taylor v. Penna. Schuylkill Valley R. R. Co., 174
Pa. 171; Albert v. North Central Ry. Co., 98 Pa. 316; Hen-
derson v. P. & R. R. R. Co., 144 Pa. 461; Borough of Easton
v. Neff, 102 Pa. 478; P. & R. R. R. Co. v. Hughes, 119 Pa. 301.

The defendant was obliged to state itself what it did during
the day to justify its action in opening the valve at nightfall.
The plaintiff failing upon the cause of action alleged, now seeks
to use this evidence, thus properly and necessarily given, to
show another cause of action, which it alleges the jury should
have been allowed to pass upon.

OPINION BY MR. JUSTICE MCCOLLUM, October 8, 1900:

The only question presented for our consideration on this
appeal is whether the learned court below erred in directing the
jury to return a verdict for the defendant and in entering a
judgment thereon. The suit was instituted and tried in a court
of common pleas in Philadelphia and appears to have been based
on the alleged negligence of the Philadelphia and Reading Rail-
way Company. It seems that at about seven o'clock on the
morning of February 9, 1897, a freight train in the control of
the defendant company was obstructed by the derailment of
four of its cars at or near the East Mahanoy Tunnel. One of
the derailed cars was a tank car containing about 6,000 gallons
of oil, and from the hole in it, caused by the derailment, at
least two gallons a minute escaped. The inhabitants residing
in the vicinity of the wreck having learned of the derailment
and its consequences, provided themselves with buckets, pails
and other conveniences for the collection of some of the oil,
which escaped through the hole in the tank, for their own use.
It was a comparatively small part of the oil which flowed through
the breach in the tank that was collected in the neighborhood
of the wreck. An effort was made to close the breach in the
tank but it was unavailing and the oil continued to flow through
the opening caused by the derailment. Resort was then had
to pumping the oil from the tank through a trough into an empty
oil car procured to receive it, but a high wind was blowing from
the east, which when the oil came out of the mouth of the pump

to the trough, carried a considerable portion of it from the main tank over towards, and across the siding. The pumping was continued from the time it commenced until dark, a period of at least four hours. At that time the oil had flowed through the hole in the tank from ten to eleven hours at the rate above stated and the conclusion arrived at was that under the circumstances the pumping should be abandoned and the valve at the bottom of the tank should be opened. The conclusion reached was acted upon and the bulk of the oil then in the tank escaped during the night through the open valve and the breach in the tank which was the result of the derailment of the car.

It is conceded by the Commercial Ice Company that the defendant company is not chargeable with negligence in the derailment of the cars which constituted the cause of the wreck and its consequences. It does not allege that the defendant is responsible for the loss incurred or damage done by the flow of the oil through the hole in the tank, but it charges the defendant with negligence in opening the valve of the tank and allowing the oil to flow through it. This is certainly an insignificant claim in view of the fact that according to the testimony of the plaintiff's principal witness, at least one thousand gallons of oil flowed through the hole in the tank into the dirt on the bank of the railroad and from it into the streams which carried the oil into the plaintiff's ice pond. It cannot be doubted that the oil which passed through the hole in the tank before the valve was opened was more than sufficient to destroy all the ice which then remained in the pond. In view of these obvious facts we are satisfied that the learned court below committed no error in directing the jury to return a verdict for the defendant.

Judgment affirmed.